IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 7:18-CV-00122-FL

| | | |
|---|---|---|
| D.B.G., CARLOS BAEZA CORDOVA, and TERESA DE JESUS GARCIA GONZALEZ, | ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) ) | |
| LANCE ADAM HAIR, | ) ) | |
| Defendant. | ) | |

This matter comes before the court on plaintiffs' motion for default judgment, pursuant to Federal Rule of Civil Procedure 55(b)(2). (DE 76). Evidentiary hearing on the motion was held August 13, 2020, at 3:00 p.m. in New Bern, with plaintiffs appearing via videoconference. The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, plaintiffs' motion is granted.

## STATEMENT OF THE CASE

Plaintiffs commenced this action against defendant Lance Adam Hair ("Hair") and others on July 10, 2018. Plaintiffs amended their complaint on September 10, 2018, specifically alleging battery, false imprisonment, and intentional infliction of emotional distress under North Carolina law against defendant Hair.[1]

---

[1] Where plaintiffs' claims against defendant Hair formed part of the same case or controversy as federal claims alleged against other defendants pursuant to 42 U.S.C. § 1983, this court has supplemental jurisdiction to adjudicate plaintiffs' state law claims. 28 U.S.C. § 1367. Plaintiffs also raise a sixth claim against defendant Hair in the alternative for negligent infliction of emotional distress. As discussed below, where plaintiffs prevail on their IIED claim, the court does not reach plaintiffs' alternative NIED claim.

After receiving an extension of time to perfect service, plaintiffs filed proof of service on October 15, 2018, showing that the Robeson County Sheriff's Office ("RCSO") served defendant Hair's sister, a person of suitable age and discretion who resides at defendant Hair's residence on October 8, 2018. The RCSO also mailed process to defendant Hair's last known address.

Defendant Hair was required to answer or otherwise respond to plaintiffs' amended complaint not later than October 29, 2018 and failed so to do. Plaintiffs moved for entry of default on November 19, 2018. The clerk of court entered default against defendant Hair pursuant to Federal Rule of Civil Procedure 55(a) on January 10, 2019. On May 26, 2020, following stipulation to dismissal of all other defendants in this action, the court ordered plaintiffs to reduce the matter against defendant Hair to judgment. The instant motion followed. In support of the motion, plaintiffs filed several exhibits, including defendant Hair's guilty plea in state court to related criminal charges; deposition testimony of Christine Buis ("Buis"), school counselor for Robeson County Public Schools; and plaintiff D.B.G.'s medical records. At evidentiary hearing, the court heard testimony from plaintiff D.B.G.

## STATEMENT OF FACTS

During the 2012-13 school year, plaintiff D.B.G. was enrolled in fifth grade at St. Paul's Elementary School, a public school in Robeson County. (Am. Compl. ¶ 20). At all relevant times, in accordance with N.C.G.S. § 115C-241, the public-school system provided transportation to its enrolled students on buses that followed routes and schedules determined by the school system. (Id. ¶ 21). During the 2012-2013 school year, plaintiff D.B.G. was assigned to the bus driven by defendant Hair, who was supposed to pick her up and drop her off at a designated stop near her home. (Id. ¶ 22). At hearing, plaintiff D.B.G. testified that she was not initially assigned to

2

defendant Hair's bus, but that defendant Hair used his position as bus coordinator to reassign plaintiff D.B.G. to his bus. Defendant Hair coaxed plaintiff D.B.G. into riding his bus by asking if plaintiff D.B.G. wanted to ride with her friends.

Throughout the 2012-2013 school year, defendant Hair used his authority, control, and access to plaintiff D.B.G. to subject her to sexual improprieties, including:

(a) frequently instructing her to arrive early at her bus stop, as early as 5:00 or 5:45 a.m., picking her up, and instead of proceeding to the next stop, parking the bus so as to leave plaintiff D.B.G. alone with him;[2]

(b) showing plaintiff D.B.G. sexually explicit photographs, particularly of naked men, and fondling her by, among other things, touching her breasts and buttocks;

(c) engaging in frank, inappropriate sexual talk with plaintiff D.B.G;

(d) making lewd comments to plaintiff D.B.G. about the bodies of other elementary school girls who were her close friends and making suggestive comments about plaintiff D.B.G.'s own appearance;

(e) dropping his pants and exposing his thong underwear to plaintiff D.B.G, causing her to run to the back of the bus in fear; and

(f) sometimes driving his bus past plaintiff D.B.G.'s house as if stalking her.

(See id. ¶ 24). During the summer after fifth grade, after the 2012-13 school year ended, defendant Hair appeared when plaintiff D.B.G. was visiting at the home of one of her girlfriends, gave each girl twenty dollars as a "graduation" gift, and asked each to pose with him for a photograph. (Id. ¶ 25). When plaintiff D.B.G. obeyed and stood with him to have her picture taken, he placed his hand on her buttocks. (Id.).

Defendant Hair was over six feet tall, weighed over 300 pounds, had authority over plaintiff D.B.G. as her bus driver, and was a well-known minister in the community. (Id. ¶ 26). Plaintiff

---

[2] At hearing on motion for default judgment, plaintiff D.B.G. testified that defendant Hair would pick her up so that she would be alone on the bus, and then park the bus before picking up the next rider. She recanted the allegation that defendant Hair drove her off into the woods alone.

3

D.B.G. was intimidated by defendant Hair and is generally fearful of authority figures. (Id. ¶ 27). Defendant Hair made plaintiff D.B.G. more fearful of him by telling her that he had earlier been accused of inappropriately touching another child on his bus and that the school had cleared him. (Id. ¶ 28).

Plaintiff D.B.G. sometimes sees defendant Hair in the community. (Id. ¶ 39). She lives in fear of reprisal from him and members of his church and has recurring nightmares about Defendant Hair following and assaulting her. (Id.). Plaintiff D.B.G. has suffered physical and psychological injury, including severe depression, anxiety, suicidal and self-harming tendencies, difficulty developing trust or forming close relationships with others, and loss of the capacity for the enjoyment of life. (Id. ¶ 40). Her parents, the adult plaintiffs, allegedly incurred expenses for her medical and hospital treatment and therapy, and plaintiff asserts she will need ongoing treatment and therapy and will continue to incur treatment expenses in the future. (Id.).

Additional facts pertinent to the instant motion will be discussed below.

## COURT'S DISCUSSION

A.  Standard of Review

On application of a party for default judgment, the court may conduct a hearing to resolve any matters relevant to ruling on the motion. Fed. R. Civ. P. 55(b)(2). In ruling on the motion for default judgment, "the [plaintiffs'] well-pleaded facts are admitted as true." Burkhart v. Grigsby, 886 F.3d 434, 438 (4th Cir. 2018) (citing Ryan v. Homecomings Financial Network, 253 F.3d 778, 780 (4th Cir. 2001)). However, "the defendant is not held . . . to admit conclusions of law," and the court must "determine whether the well-pleaded allegations in [plaintiffs'] complaint support the relief sought in this action." Ryan, 253 at 780; see Burkhart, 886 F.3d at 438. The burden remains on plaintiff "to prove its claim for damages by a preponderance of the evidence."

4

Case 7:18-cv-00122-FL   Document 84   Filed 08/18/20   Page 4 of 10

Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp., 383 F.2d 249, 252 (4th Cir. 1967); see DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 329–30 (4th Cir. 2008).

B.  Analysis

    1.  Liability

A battery is 1) a harmful or offensive bodily contact, 2) intentionally caused by defendant, 3) without plaintiff's consent.  See Dickens v. Puryear, 302 N.C. 437, 444–46 (1981); Hayes v. Lancaster, 200 N.C. 293, 295 (1931); Wilkerson v. Duke Univ., 229 N.C. App. 670, 675 (2013). Plaintiffs' allegations that defendant Hair fondled plaintiff D.B.G.'s breasts and touched her buttocks show that defendant Hair intentionally caused harmful or offensive bodily contact. (Am. Compl. ¶¶ 24, 25).  Likewise, the well-pleaded allegations demonstrate such contact was not consensual.  (See id. ¶¶ 24–28, 65).  Accordingly, defendant Hair is liable for battery.

"A cause of action for . . . false imprisonment is based upon the deprivation of one's liberty without legal process."  Melton v. Rickman, 225 N.C. 700, 703 (1945). In North Carolina, the elements of a false imprisonment claim are (1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, (3) against plaintiff's will. See Fowler v. Valencourt, 334 N.C. 345, 348–49 (1993); West v. King's Dep't Store, Inc., 321 N.C. 698, 702 (1988); Black v. Clark's Greensboro, Inc., 263 N.C. 226, 228 (1964). "While actual force is not required, there must be an implied threat of force which compels a person to remain where he does not wish to remain or go where he does not wish to go." West, 321 N.C. at 702 (citing Hales v. McCrory-McLellan Corp., 260 N.C. 568, 570 (1963)); Rogers v. T.J.X. Companies, Inc., 329 N.C. 226, 229 (1991). "The restraint requirement of this action requires no appreciable period of time, simply sufficient time for one to recognize his illegal restraint. The tort is complete with even a brief restraint of the plaintiff's freedom." West, 321 N.C. at 703.

5

At hearing on motion for default judgment, plaintiff D.B.G. testified that defendant Hair would pick her up so that she would be alone on the bus, and then park the bus before picking up the next rider. Defendant Hair, a large man with authority over plaintiff D.B.G. as her bus driver, used the implied threat of force to leave plaintiff D.B.G. alone with him (See Am. Compl. ¶¶ 26–28). Accordingly, defendant Hair is liable for false imprisonment.

To plead IIED, plaintiff must show "(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another." Turner v. Thomas, 369 N.C. 419, 427 (2016). Conduct is "extreme and outrageous" where it "exceeds all bounds usually tolerated by decent society." Dickens, 302 N.C. at 447. "In this context, the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).

Defendant Hair intentionally engaged in extreme and outrageous behavior toward plaintiff D.B.G. by exposing himself when she was alone with him on the bus, touching her inappropriately, subjecting her to lewd talk and sexually explicit photographs, and driving his bus by her house and tracking her down at her friend's house outside school hours. (Am. Compl. ¶¶ 24–25, 77). Furthermore, defendant Hair's conduct gives rise to an inference that he knew or was recklessly indifferent to the risk of traumatizing plaintiff D.B.G., particularly where he boasted to plaintiff D.B.G. of being cleared of prior accusations of similar wrongdoing. (Id. ¶¶ 24–25, 28, 77). Finally, defendant Hair's conduct has caused plaintiff D.B.G. severe emotional distress,

specifically the PTSD reflected in plaintiff's medical records. Accordingly, defendant Hair is liable for intentional infliction of emotional distress.

2. Damages

Unsurprisingly, defendant Hair's treatment of plaintiff D.B.G. damaged her mentally and emotionally. Buis, plaintiff D.B.G.'s school counselor, testified at deposition that in sixth grade plaintiff D.B.G. had trouble with her social interactions at school from heightened emotions, anxiety, and frustration. On or about May 23, 2014, Buis sent plaintiff D.B.G. to Southeast Regional Medical Center because she was having suicidal thoughts and thought about harming herself as a result of defendant Hair's inappropriate touching. Her medical records indicate she was diagnosed with posttraumatic stress disorder and prescribed Prozac. From May 2014 to October 2014, plaintiff D.B.G. received therapy from Robeson Health Care Corporation to help her avoid self-harm. However, plaintiff D.B.G.'s therapist moved out of state and they never got in contact again. From approximately April 2015 through December 2015, plaintiff received therapy from Monarch Behavioral Health because she heard a voice telling her to hurt herself, she saw the shadow of defendant Hair, and that she had nightmares. Plaintiff D.B.G. stopped attending therapy because plaintiffs could no longer afford to pay for it.

By the spring of eighth grade, Buis noted significant improvement in plaintiff D.B.G.'s demeanor, observing her to be a lot calmer, more stable, and a lot less likely to lash out if some said or did anything at school that upset her. Plaintiff D.B.G. graduated from high school this year and has recently commenced her collegiate studies. However, plaintiff D.B.G. testifies that as a consequence of defendant Hair's conduct she is uncomfortable showing her body and afraid to talk to men.

At hearing, plaintiffs' counsel informed the court that plaintiffs' medical expenses of approximately $5,000.00 had been paid for by settlement with other defendants dismissed from this action.[3] Counsel represented at hearing that plaintiff D.B.G. seeks compensation for emotional distress and punitive damages. Plaintiffs did not present any expert evidence at to plaintiff D.B.G.'s current mental state, likelihood of treatment, cost of treatment, and the duration of future treatment. Taking the foregoing evidence (and the limitations thereof) into consideration, the court concludes that plaintiff D.B.G. has proved by a preponderance of evidence compensatory damages of $75,000.00.

Under North Carolina law, "punitive damages may be awarded . . . to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1. "Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that [fraud, malice, or willful or wanton conduct] was present and was related to the injury for which compensatory damages was awarded[.]" Id. § 1D-15(a). "The claimant must prove the existence of [fraud, malice, or willful or wanton conduct] by clear and convincing evidence." Id. § 1D-15(b). "[T]hough willful or wanton conduct does not require proof of malicious intent, it does require proof of the conscious and intentional disregard of and indifference to the rights and safety of others." Ward v. AutoZoners, LLC, 958 F.3d 254, 270 (4th Cir. 2020).

"The clear and convincing standard requires evidence that should fully convince." Scarborough v. Dillard's, Inc., 363 N.C. 715, 721 (2009) (internal quotations omitted). In the context of punitive damages, "whether the evidence is clear and convincing" is not solely a

---

[3] Where plaintiffs Baeza and Garcia only sought compensation from defendants for plaintiff D.B.G.'s medical expenses, they have not proved damages by a preponderance of the evidence and are not entitled to recover from defendant Hair.

question for the jury. Id. Rather, "courts must determine whether the [plaintiff] produced clear and convincing evidence from which a jury could reasonably find [willful or wanton conduct]." Id. at 721–22 (emphasis added). "Evidence that is only more than a scintilla cannot as a matter of law satisfy that nonmoving party's threshold statutory burden of clear and convincing evidence." Id. at 722.

A punitive damages award must bear a rational relationship to the sum reasonably needed "to punish a defendant for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts." N.C. Gen. Stat. § 1D-1; Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 20 (1991). In exercising its discretion, the court is guided by several factors mandated by statute:

> a. The reprehensibility of the defendant's motives and conduct.
> b. The likelihood, at the relevant time, of serious harm.
> c. The degree of the defendant's awareness of the probable consequences of its conduct.
> d. The duration of the defendant's conduct.
> e. The actual damages suffered by the claimant.
> f. Any concealment by the defendant of the facts or consequences of its conduct.
> g. The existence and frequency of any similar past conduct by the defendant.
> h. Whether the defendant profited from the conduct.
> i. The defendant's ability to pay punitive damages, as evidenced by its revenues or net worth.

N.C. Gen. Stat. § 1D-35(2).

The court concludes that plaintiff D.B.G. has proven by clear and convincing evidence that defendant Hair's conduct was willful and wanton. Plaintiff D.B.G. testified that defendant Hair used his authority as bus coordinator to transfer plaintiff D.B.G. to his bus. He talked about plaintiff D.B.G. and her friends' bodies in a sexual manner. He took his pants down in front of plaintiff D.B.G. and showed her a thong he was wearing. He isolated plaintiff D.B.G., a fifth grader, and touched her on her butt and thighs. Finally, he told plaintiff D.B.G. that he had

9

Case 7:18-cv-00122-FL   Document 84   Filed 08/18/20   Page 9 of 10

previously been accused of touching a girl inappropriately but that the investigation never went anywhere. In sum, defendant Hair's conduct sexual assault of plaintiff D.B.G. was done with "conscious and intentional disregard of and indifference to" her rights and safety. See Ward, 958 F.3d at 270.

Defendant Hair's conduct can only be described as predatory and highly reprehensible. His sexual exploitation of plaintiff D.B.G., a young girl, for his own personal gratification presented a high likelihood of serious mental and emotional harm to plaintiff D.B.G. Defendant Hair's conduct took place in several instances during the 2013-14 school year. And as noted above, plaintiff D.B.G.'s compensatory damages have been proven in the amount of $75,000.00. Taking into account all relevant factors based upon the evidence presented, the court in its discretion awards plaintiff D.B.G. punitive damages in the amount of $150,000.00.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for default judgment (DE 76) is GRANTED. Plaintiff D.B.G. may have and recover from defendant Hair compensatory damages in the amount of $75,000.00 and punitive damages in the amount of $150,000.00. The clerk is DIRECTED to close this case.

SO ORDERED, this the 18th day of August, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge